The Court would like to beg your indulgence for just one moment. The two Oregonians on the panel wish to make some acknowledgements. For myself, it's a great honor for me to sit here for the first time in front of my Aunt Leon and my two magnificent cousins, Janice and Tammy. And I think Chief Judge Aiken has a comment or two as well. It is beyond a privilege to have been asked to sit with the Court. I want to thank you, Judge Rader, for that opportunity. And also on behalf of all of the law students who assisted in preparing me for today's arguments, I want to give a shout-out to them and to the respective schools and all the amazing legal education that's going on and their level of interest and their willingness to step outside the customary roles and to assist. Particularly, I want to thank Tom Carter, who's been Judge Scopel's long-time clerk, and a dear friend of mine who really ran what I would call Camp Federal Circuit for us, with all the law students of 10 or 12 helping. And particularly, Jolie Rousseau, who's been my law clerk since I came to the Court. As a point of personal privilege, I also want to call out that I would not normally have the privilege of seated or hearing cases in a Pioneer Courthouse. Oregon judges are not asked to sit with the Ninth Circuit because the docket's filled with our cases, and so it seems that that's a good rule. So it's a privilege, and I'll probably never get this opportunity again. But in honor of that occasion, I am wearing Justice Roberts' big Roberts robe, which was a gift to me after passing $100. And I thought it was particularly appropriate that I get to wear it today, so I thank you very much for the courtesy of being a part of this moment. Thank you, Chief Judge Aiken. That's lovely. Our first case this morning is Canix International Lumber v. The United States. Mr. Junker. Thank you, Your Honor. May it please the Court, my name is Joel Junker. I'm appearing here today on behalf of my client, Canix International Lumber Sales Limited. And with the leave of the Court, I'd like to offer my thanks for the privilege and pleasure of appearing before you here on the West Coast. What I'd like to do in the brief time I have, Your Honor, is offer by way of opening a couple quick comments on 1625 to give us a frame or a context of reference to the arguments of the parties. Then I'd like to move quickly to three indisputable facts, which I think are a foundation to this case. And then, of course, not only to answer the Court's questions, but I'd like to move through and address the six arguments offered by the government as time permits. Well, let's start with you telling us how you can rely on the letter that you presume to be the same as when you can't show that you have any design specifications that your lumber matches to. Yes, Your Honor. One has to look at the description of the articles in the ruling. The designs offer no information whatsoever on which the manufacturer could conduct his manufacturing, design his product, or otherwise make modifications to be sure that it was in compliance. So the fact that there were descriptions offer no material information to an importer under its right to know, as the Senate called it, about interpretive rulings. The other thing that should be noted about designs is that the designs referred to in the rulings are not alike other types of situations where designs are referred to as part of the description of the article. A typical example would be a chemical formula where a formula or specifications concerning the product are clearly an element of the description of the article. In this case, the Court nor my client have any opportunity to refer to something specific in the designs to analyze for purposes of identicality of the rulings. But when you're relying on identicality between the description in this prior ruling letter and you're not identical with all the circumstances in this letter, how can you invoke the identicality rule? Well, there's a difference between circumstances, Your Honor, of import and elements of the description of the article. The regulation clearly indicates that we are tied to the description of the article for purposes of being bound by the ruling. The ruling says that the goods in the ruling were of specific and specified lengths, and it's undisputed that your goods were of standard lengths with the intention that they could be cut to be at the precise length as needed. Isn't that a difference between the goods right there, a physical difference? Not at all, Your Honor. In fact, if you look at the precise language of one of the rulings, it refers to standard even-foot lengths from a range of 2 foot to 24 foot. So the idea of a standard length in an even-foot basis is acknowledged by the ruling itself. So the lengths, if you look, it's an immutable... If there's any ambiguity, why didn't you ask for your own ruling letter? Well, Your Honor, the record reflects two things in that regard. We've only argued one of them. First of all, there is no requirement that a party seek a ruling. In a sense, there's no ambiguity. The factual aspects of my client's imported merchandise are precisely described by the two rulings. So he is entitled to rely on that. Secondly, we did not argue it or point it out, but if you go to the record, we point out that that period of time, it was pointed out in our motion, that that period of time, that Customs was taking an extraordinarily long time to issue rulings. I can offer more comment on that, but it would be outside the record. We'll leave it to what's included in the record. But it's simply not necessary to have a ruling, to rely on other rulings, Your Honor. To the extent that the letter rulings are inconsistent with our Court's decision in Millennium, which of those two things are we bound to follow? Your Honor, the fact that Customs skipped over the 1625c proceeding to modify or revoke a ruling cannot be corrected non pro tonque by a conclusion that the substantive decision to change was effectively correct. And I would point out one more important thing about 1625. I don't understand your answer. So Millennium, to the extent that the Millennium decision dictates an affirmance in this case, what do the letter rulings matter? We're bound by other panel decisions. The process of 1625c requires Customs to do three things. One is to give notice and opportunity to comment, or notice, first of all, the proposed change. Two, opportunity to comment. And three, this is the reason why Millennium and the court below on the substantive are not appropriate to be considered for your conclusion. And that is the client was entitled to 60 days' effective notice of the change during which he has the chance or she has the opportunity to effectively modify their practices or modify their merchandise or modify their classification. So the fact that... Well, the Millennium decision is quite old. It's quite old. It didn't occur in 2001, Your Honor, when my client had to make a classification decision. So here we are 11 years after my client reviewed those rulings, and it still doesn't know for this court because we don't know what the correct classification is. Whereas if Customs had gone through the 1625c process, given opportunity to comment, reached the decision that Millennium and the mechanics courts reached, gave effective notice of that decision, allowed my client time to modify, we wouldn't be here today and my client could have planned accordingly, as intended by 1625, its business structure for these imports. Are you required to show that the goods are recognized, unassembled pieces? I'm sorry, could you repeat that, Your Honor? Are you required... Is it required for you to show that the goods, in order to classify where you want to classify them, are recognized, unassembled pieces? For purposes of relying on the ruling, we are required to show simply that they are identical to the merchandise described. Yeah, but the regulation itself says, doesn't it? Am I wrong? Doesn't the HTSUS that this falls under say, recognize unassembled pieces? You make a lot of arguments in your brief that this is not a, quote, use provision. That's why you're only required to show identicality between the physical structure of the goods, as I understand your argument. But my suggestion to you is the HTSUS, in this particular classification category, has almost something that seems to me to be the equivalent of a use provision. These goods have to be recognized, unassembled pieces, for purposes of falling within this section. And it was found in those rulings that they were. They met that classification. They explained why, because of the lengths and the diagrams that accompanied them. You don't have that. You haven't identically done what the people did in those rulings. Well, Your Honor, I mean, I would point out two things. I think for purposes of 1625C, our analysis is precisely defined by law and regulation. And that is identicality with the rulings. To the extent the rulings would occur or involve some level of recognition, we think the court was in error to find that the presence of certifications, the presence of the matching, the presence of certain designs, were not recognizable in the context of the rulings. So, and again, we're talking 2001, when Carr and Kline have made this decision, long before the millennium decision, long before the court's case mechanics. My client is looking for certainty, predictability, transparency, and, finally, the right to know what Customs rulings mean. Those are the terms of a Senate report of the Commissioner of Customs, which he testified before the Senate. And my client relied on those rulings to the extent they were transparent, certain, predictable, and gave him knowledge of very specifics on which he could act. So the idea of suggesting that my client failed in this unrespect, by not addressing at the time of import the context or the analysis of the courts, and some nine years later, we think is an unfair rating and unfair burden on the client. So you're, if I go back, you've conceded the substantive issue, that basically the categorization is correct, right? And you're merely here on procedural grounds. No, Your Honor, not at all the case. First of all, the fact that my client has chosen to appeal this issue only, in no way should be read as conceding the underlying classification. All right. Well, that's how I read it. That's in our brief. And, Your Honor, it's a plain fact. Judge Rustani is resolute in her opinions about this particular merchandise. And even though I believe we could show a clear and genuine issue of material fact, to achieve that, to go back to trial, to support Judge Rustani with her attitudes in these cases, is not in my client's interest. So we are proceeding on the argument that we think is well-founded in the interest of my client's resources and the court's resources. The other arguments I'd like to focus on quickly are the fact that, you know, in 1997, when one reads those rulings, it is clear that softwood lumber of spruce, pine, and fir between the widths of 1 inch by 2 inches and 2 by 8 and the lengths 2 feet to 24 feet and with an angle cut of 71.6 percent. In 1997, under those rulings, those items were classified under 4418. In 2001, after the CF-29 and the liquidation by customs, that same article was classified by customs under heading 4417. Now, trusses require specific lengths, not standard lengths, right? Which cuts against your argument that these are truss applications. Your Honor, the record below was heavily contested about the issue of whether even foot lengths can be used for trusses. And you can see there's a great discussion and conflicting expert opinion about how trusses, some truss construction, have these components with a square input to splice with longer pieces. The mere fact that it comes in, or the fact that it comes in standard lengths, as recognized by the customs rulings, is a practice that is used in the industry. So the mere fact that there are standard lengths on the even foot does not at all disqualify in the record below, at least as contested, that these items should be truss components. I would point out one more thing. This business about their expert stating that it is not recognizable as a truss component because the item must be 1 16th inch outside of the record, which my clients have probably, in the housing industry, they've only laughed for the last four years at that. The fact of the matter is that that conclusion is not in the ruling, first of all. Secondly, it occurred 11 years later in litigation. Are the explanatory notes binding? No, Your Honor. Are explanatory notes just informational? Explanatory notes by law are a guide in the interpretation. They are not binding in and of themselves. The explanatory note says that to qualify is to be recognizable unassembled pieces of particular articles. The subject merchandise needs to be dedicated solely or principally for use in those articles. Yes, Your Honor. That is applicable. You're correct. That is applicable and is used by the court, relied upon by the court below. That's for purposes of determining the final classification based on the condition of goods of time and rotation. We are arguing the issue of separation. We are arguing that under the law of 1625C, customs, unless they change the ruling, are bound by that ruling. But those rulings both say there were diagrams that showed exactly how these pieces would fit together in a completed roof truss. And so those rulings demonstrate that both of the submitted pieces that were considered met the explanatory note for definitional purposes and for classification under 4418. You haven't done that. No, Your Honor. So you're not identical with the ruling. I think it's important for the court to ask if those particular physical items were classified under 4418 in that physical description and they were accompanied by designs, how can it be that the exact same article is not recognizable when it's not provided with a design? I mean, it makes no logical sense. That's like saying something is colored blue, it's a blue thingamajig, if you've got directions, saying it's a blue thingamajig, but if you've got a blue thingamajig and it doesn't have directions, it's not a blue thingamajig. I submit to you that it doesn't make logical sense that the mere fact that an unspecified, unidentified, unreferrable design to which my client could refer somehow makes this article magically a trust component when this article, the same physical article without a design, in fact, it did have designs and certifications from trust manufacturers, but somehow magically that's not a trust component. Mr. Junker, would you like to save your rebuttal time? I have 30 more seconds before my rebuttal time. No, actually, your rebuttal time is 30 seconds from expiration. If the court has no questions, I'll save my 30 seconds. Okay, well, we'll restore Mr. Junker's entire rebuttal time, and would you give Ms. Williams an extra two minutes if she needs to use it? Thank you, Your Honor. Thank you. Just one second. We'll get the time correct. Thank you, Ms. Williams. Please proceed. Thank you. I think a little context may be helpful to clear up the issue here. When classifying goods, customs looks at a product and says, essentially, is it a chair or a table? And then they find a subheading that matches that. Let's say customs finds it's a chair. The importer can say, I think that's substantively wrong. They have one other option. They can come in and say, maybe it's substantively correct, but, customs, you're bound to classify it incorrectly because you had a prior ruling that's exactly the same good and you have to follow that ruling unless you revoke it. Canucks here is essentially saying that tack. They're saying we're not going to challenge the substantive classification. Whether we agree with it or not, we're going to let it sit as if it's longer. What they're saying is, procedurally, we have a protection of two rulings. Well, I think I understand them to be arguing that these rulings are what give the world notice of how these goods ought to be classified and that when they imported them, that's the notice that they had that they would be classified and if they're identical to these goods in the same way these were and whether customs made a mistake in these rulings or not. It's not for, they should be able to rely on them and there is a whole procedure for changing their mind, which customs did not undertake. That is an accurate description of Canucks' argument. Canucks' argument is flawed for two reasons. The first being, you only get a protection of a ruling under 177.9 if you have goods that match or are identical to the physical description given in the ruling. Here, the rulings just use the word specific lengths. Specific means something. Canucks is essentially arguing that specific is another word for standard. In fact, Canucks' oral argument said one of the rulings says that the goods can be, and I quote, standard sizes within a range of 2 to 24 feet. The ruling does not say that. It says they have to be specific lengths within that range. Mr. Williams, is it your contention that Canucks cut an angle in standard boards just to get a better tariff entry rate? And to reduce surgical therefore. I don't know it's Canucks' intention and honestly Well, but that seems to be at the heart of what you're telling us, right? Is that you think they're really using the angle cut as a subterfuge to avoid the import of standard lumber at standard lengths. We don't know whether it's Canucks and Lidl who did it to get around the tariff. It wouldn't personally surprise me because I've been doing this kind of law for 20 years and it's not the first time somebody tried to get around the softwood lumber agreement. They've drilled holes in lumber. They've notched the end. All I'm trying to argue is it's no longer lumber. Whether the intent is to get around the agreement, I don't want to cast aspersions against Canucks. That may be accurate. Well, if the government letter is too broad and perhaps a little ambiguous, why not allow them to rely on that? That's a very good question, Your Honor. And there's a very simple answer, which is two parts. One, the regulations themselves tell you that the rulings and what they cover are intended to be read narrowly. We first know that because of the language of 177.9b2, which says the description must be identical. Identical is a very narrow word. It doesn't say similar. It doesn't say maybe. It says identical. Secondly, 177.9c says that you shouldn't rely on a ruling unless your turn Those rulings apply only to transactions. Which are, and I'll read it, will be applied in connection with any transaction other than the one described in the ruling. That tells you you're talking about only the rule. So how are they not identical? Because the ruling tells us the word specifically. Okay, let's look on page 21 of your appendix, because that's one of the two rulings, because I think you're misquoting it. One of the rulings says specific lengths. The other one does not. The other one And so I'd like you to show me on page 21 of the appendix where the ruling dated February 6, 1997 says specific lengths. If you look, you're on page 21, correct? It says, components will be imported cut to specific sizes within a range of Wait, I'm sorry. Hold on, hold on. You're going a little fast. Where are you? What sentence? It's a very short rule. One, two, three, four, five, fifth sentence down from the beginning of it. Yeah. The components will be imported cut to specific sizes within a range. So the word specific is modifying the range of 1 by 2 or 2 by 8 inches in thickness. That's a specific size compared to thickness, not length, right? I think specific applies to both parts of that. It applies to the inches in thickness and the range in length. It says specific sizes within a range. A range of and a range of. So I think it is intended to say cut to specific sizes and then within a range and within a range are both modified by specific sizes. And that's really the only reasonable way to read this because we know that truss are, according to the undisputed evidence, are virtually always, excuse me, while the truss itself may be an even foot length, it is quote unquote extremely unlikely that a top cord in it will be an even foot length. So we know that it is extremely unlikely that goods would be imported in a standard length. So even back in 1997. So the only way that can be reasonably interpreted is to mean they meant specific. And specific means to the 16th of an inch and it's not an even foot length. And they didn't use the word standard. Had they used the word standard, Canix may have somewhat of an argument. Well, what if the specific length in the ruling was identical to the standard length? Well, we know that's not true because we know the evidence dating back to millennium was that Stan Customs has always believed that truss components are not standard lengths. That they're always cut to a specific size to a truss and we can tell that from all of the testimony that went on in millennium which the imports of millennium were 1999 is when they started, barely two years after this ruling. But it says within a range of 2 to 24 feet in length, right? So that means at least one of the boards submitted must have been 2 feet. At least one of the boards submitted must have been 24 feet and then some in the middle. Well, their goods, some of them are 2 feet, some of them are 24. Well, what are they? None of them are 2 feet and none of them are 24 feet long. That's the problem even if you were to assume that Customs meant literally 2 and 24, not using those as round numbers. We know none of the goods here are identical to that. The goods fall somewhere in between and we also know that Customs dating from 1997 has always consistently believed that truss components are not an even foot length. That's why they use the word specific. Not an even foot length, so not usually 2, 4, 6, 8, somewhere in between. They meant they're usually 2 and 16th of an inch and usually or all of them are extremely unlikely to be at an even foot length. And this highlights the problem with parsing a ruling that has one word in it and deciding your good applies. You're taking a risk, and if you're going to take that risk, the problem with that is you end up here. I understand completely your argument about identicality. Would you tell me what would happen if the goods were identical to this ruling and they also happened to be identical to Millennium as a court? How would we handle that? We'd have a Federal Circuit case that binds us, but that case did not address these rulings. They weren't raised in that appeal or in that case. I don't know about the underlying case, but certainly in the appeal briefs they didn't exist. So we would have a case that addressed a point of law, a classification point, but without having considered the rulings, what would we do? What would we give deference to? What would we be bound by? What would happen in that case is if it were identical, the plaintiff could come in and say, under 177.9, I get the protection of that ruling. And even though it's wrong substantively, and we know that from Millennium, I still get the protection. And frankly, customs probably would have given it to them without a complaint because they're not in the business of ignoring rulings for no reason because that agency lives and dies by rulings. This is how they work. They want them followed. So Millennium would contradict a ruling, but that's the way the statute and the regulations are drafted, is to give you protections. That highlights, though, the fundamental problem with this case and the problem with the ICP case that was mentioned in the briefing. This case, at best, is not a violation of 1625. This ruling was not revoked. To this day, Customs feels it's correct and it governs. The dispute is, does Canucks fall within it? The proper cause of action is you come in and you say, I have a binding ruling. It binds my goods. You didn't govern the ruling. You didn't apply it. I get the protection of the ruling under 177.9. That is what the proper cause of action should have been. Canucks, in this case, lose that, but that's the cause of action. It's not a cause of action that somehow we effectively revoked a ruling. We didn't revoke it. There's not a single thing here that revoked it or effectively revoked it. At best, Customs didn't follow it, and it's a critical distinction because, as the government has argued in the ICP, which I believe one day will be heard before you, there's differences, and you can't fit a square peg in a round hole. The clause of action here is a violation of 177.9. We don't believe it occurred, but that's what it is. It is not a revocation. So I think all of the, whether it's a violation of 1625, it's sort of a red herring. Truly the issue here is, did the ruling govern it? And I think the arguments are clear. The goods aren't identical. And the doubt in that dispute always goes to Customs because of the narrow way that the regulations are written. And it's important that the intent of Customs in drafting those regs narrowly to protect against rulings being misunderstood is protected itself. When looking at a ruling, Customs is looking at just the good, the applicant, the person who applied for the ruling brought in. They are basing their ruling decision just on what that one prospective importer gave to them. They're giving, therefore, a narrow ruling based on only one good that only they saw. To say that if they use sloppy language or hindsight, maybe you can twist their words a little bit, is countermanding the intent of rulings, which we know from the regs are to rule on a single good. So if this were allowed, you could, in hindsight, say, well, that language is a little sloppy. We'll extend it to include goods Customs never intended that are completely wrongly classified. Customs didn't want that. The regulation is written strictly to prevent that sort of thing. And that's the problem with saying, well, the doubt here should go to CanEx because maybe they can shoehorn in their good under a vague description. So that's what I want to emphasize, that the ruling doesn't cover it here, and if there's any shade of a doubt, that doubt goes to Customs, not to CanEx. If there's no other questions, thank you very much. Thank you, Ms. Williams. Mr. Junker, you have a little over two minutes remaining. Thank you, Your Honor. Very generous, as usual. I still have to say, there's so little time. Let me just address a couple of things. First of all, with respect to Millennium, how do you handle Millennium in the context of Decision No. 1625 under CanEx? Two points. One, Millennium did not raise the issue, in the context of the underlying subsequent classification. However, there is the related collection action in which the U.S. is sued for liquidated damages and collection action,  The issue is brief and argument for the court. It has asked to see. It has ordered parties to provide copies of our briefs to this court, and it is looking forward to your guidance. On the range issue, the court was correct to point out that, first of all, it ranges from two feet to 24 feet. It doesn't say things in between. And nowhere is one-sixteenth of an inch mentioned. And, indeed, nobody ever heard this one-sixteenth context requirement until we had an expert opinion from the government's expert witness, nine years later, after my client was reading the rulings to determine whether it was identical. Commissioner of Customs testified, importers have no right to be informed about customs rulings and regulations and its interpreted rulings and directives, and to expect certainty that the ground rules are not unilaterally changed by customs without proper notice and opportunity to respond. They didn't say customs that an importer is entitled to or should be aware of. He has a right. She has a right to know what that ruling is. Now, I will tell you, if you look at rulings, you will see all kinds of extraneous information, where the goods are coming from, the context of whether it's coming by rail or a road or a boat. And there are all sorts of facts that are not material to the ruling. So I think it's the Court's responsibility to focus on purposefully determining identicality. What are the material aspects of the ruling on which the customs service relied and for which the importers must match for identicality? Thank you, Mr. Junker.